FIRST NATIONAL BANK OF ANTIGO, Respondent, vs. WUN-DERLICH, Appellant.

*February 2—February 21, 1911.*

*Contracts, when complete: Conditional delivery: Guaranty: Revocation: Questions for jury: Continuing guaranty: Discharge by renewal of note: Trial: Order of proof: Rebuttal: Discretion.*

1. The fact that a contract of guaranty in the plural form and having at its foot blanks for the signatures of two guarantors is signed by only one person at the time of its manual tradition, is not conclusive that it is an incomplete instrument. Upon the evidence in this case the question of the binding effect of such instrument on the signer was for the jury.

2. Where a writing, signed by one person only, in terms guaranteed payment of sums to be advanced by a bank to another person, evidence that the signer afterwards insisted to the cashier of the bank that he had delivered the instrument with the understanding that it was not to become binding until signed by his brother, and that upon being informed as to the amount already advanced on the faith of the guaranty he forbade any further advances, does not show a revocation of the instrument as to sums already advanced or require submission of that specific question to the jury.

3. Where by its terms a guaranty is continuing in its nature and covers all sums to be advanced by a bank to a certain person and all notes given for sums so advanced, up to a certain amount, the guarantor is not discharged by renewal, without his knowledge, of notes so given and extension of the time of payment thereof.

4. Refusal of the trial court to permit a witness for defendant to testify on rebuttal on the question of the delivery of the instrument in suit, is *held* in this case not an abuse of discretion.

BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action on a contract of guaranty signed by the defendant. By its provisions the defendant guaranteed the payment of the indebtedness of J. N. Sanford to the bank to an amount not exceeding $1,000. The principal questions were whether the guaranty was delivered absolutely, or conditionally upon its being also signed by Chris. Wunderlich, a brother of the defendant; whether it was revoked by the defendant; and whether part of the indebtedness of Sanford to the bank was incurred after the defendant had instructed the cashier of the bank not to increase Sanford's loans.

The guaranty was drawn up by the defendant's attorney at the request of Sanford and is as follows:

*"To the First National Bank of the City of Antigo, Wisconsin:*

"For value received, we, the undersigned, hereby guarantee the payment of all future sums of money advanced by you to J. N. Sanford, and guarantee the payment of all notes executed by him to said *First National Bank,* for loans or sums advanced to him in any amount not to exceed the sum of one thousand ($1,000) dollars.

"This guarantee shall not be affected by any other guarantee you may have or other securities so far as the same shall be for the security of any sum in excess of the amount above named.

"In witness whereof, we have hereunto set our hands and seals this 8th day of May, 1905.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
"GEO. H. WUNDERLICH.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)

"In presence of W. B. McArthur."

The exact date of the guaranty is in dispute, but it was signed in the first part of May, after banking hours, in the bank, in the presence of the attorney, Sanford, and the cashier of the bank. The defendant testified that it was delivered to the cashier and was to become effective only when signed by the defendant's brother. The cashier and Sanford gave evidence that it was delivered absolutely as a guaranty, that the defendant after its acceptance by the bank stated that his brother would also sign it, and that the bank on the same day advanced money to Sanford as a loan on the guaranty. Thereafter the defendant and his brother went to the bank. The brother of the defendant at that time refused to sign the guaranty and they both asserted and protested that the instrument had not become effective. The cashier of the bank testified that he informed the brothers that he understood and considered it to be in force and binding and also informed them of the amount of Sanford's indebtedness. The cashier testified that he was then instructed by the defendant not to increase the amount of Sanford's loans. The defendant testified that he went to the bank to obtain the return of the guaranty signed by him and that the cashier informed him that it had been misplaced and for this reason it was not delivered to him.

On April 29, 1905, the bank loaned Sanford $200; on May 10, 1905, $300; and on June 16, 1905, $300 on his notes. These notes were renewed at the bank by Sanford without the knowledge of the defendant. This action is to recover the amounts due on the renewed notes.

The defendant testified that he made the second visit to the bank on the day following or on the second day after he signed the guaranty. The defendant's brother testified that this visit was not more than two or three days after the guaranty was signed by his brother. The cashier of the bank testified that the second visit was made in the latter part of June.

The jury rendered a general verdict in favor of the plaintiff, which covered the amounts due on the loans of April 29, 1905, and May 10, 1905, and disallowed recovery for the $300 loaned on June 16, 1905. The defendant appeals from the judgment on the verdict in plaintiff's favor.

For the appellant there was a brief signed by *T. W. Hogan,* who also argued the case orally.

For the respondent there was a brief by *Henry Hay,* attorney, and *Goodrick & Goodrick,* of counsel, and oral argument by *Mr. Hay.*

SIEBECKER, J. The defendant contends that at the time the instrument was delivered to the cashier of the plaintiff bank he informed the cashier and it was mutually understood that the guaranty was not to become effective and binding until the defendant's brother had signed it, which he was expected to do within a day or two. This is controverted by the evidence of the cashier and Sanford, who assert that no such provision or condition was stated by the defendant. They assert that the delivery of the guaranty was unconditional and that the parties understood that it then became effective. It was a question for the jury to say whose version was correct. They found that the parties intended that it should be effective from the time of delivery.

It is argued that the form of the instrument shows on its face that it was an incomplete and partially executed contract, in that it is in the plural form and at the foot has two

blanks for the signatures of two guarantors, and that the cashier knew that only one had signed it. These were evidentiary circumstances to be considered in connection with the other evidence on the question, but they do not of themselves show that the instrument was not an executed and complete contract when so delivered to the cashier. The fact that a contract in the plural form is signed by only one person at the time of its manual tradition is not conclusive that it is an incomplete instrument. Contracts of such form may be and often are treated by the parties thereto as complete, effective, and binding on the subscriber. 1 Randolph, Comm. Paper, § 87. The binding effect of this contract, under the facts shown, was a question to be tried out before the jury on the evidence adduced.

It is urged that the guaranty was revoked and that the court erred in not specifically submitting that issue to the jury. We have examined the evidence on which reliance is placed to show a revocation. The claim is that the defendant revoked it shortly after the cashier received it into his possession, at the interview with the cashier after defendant's brother had refused to sign it. True, the defendant insisted to the cashier at this meeting that he had delivered the instrument with the understanding that it was not to become effective and binding until the brother had signed it, but the evidence fails to show that he revoked it. Indeed, this would have been inconsistent with his claim that it was never in force. The cashier testified denying that anything concerning a revocation had occurred, but asserted that the defendant at this interview asked what amount the bank had advanced to Sanford in reliance on the guaranty, and upon informing him thereof the defendant forbade him advancing any additional amount. The jury found this to be true and therefore disallowed recovery for the $300 loaned on June 16, 1905, on the evident theory that this sum was loaned to San-

ford after the defendant had directed the cashier not to loan him any additional sum. The submission of this question embraced all the issues of fact presented by the evidence on this branch of the case, and hence no errors were committed respecting an alleged revocation.

The further contention is made that the defendant was discharged from the obligation to the bank for all sums so advanced on the faith of the guaranty by the renewal of the notes and the extension of the time of payment without his consent or knowledge. This claim is asserted upon the ground that he as guarantor is secondarily liable and that such renewals and extensions of the time of payment operated to release him. The contention overlooks the continuing nature of the guaranty. By it the defendant guaranteed payment of all future sums advanced and the payment of all notes executed to the bank for sums advanced in any amount not to exceed $1,000. It seems clear to us that the guarantor undertook to pay any sums due on any notes up to $1,000 and that the renewed notes were embraced in such promise.

The guaranty recites that it was given for value and there is no evidence to contradict the recital; hence the court correctly held that there was no issue raised on this point.

An exception is urged to the ruling whereby the witness Hogan was precluded from testifying in rebuttal on the issue of the delivery of the instrument. The trial court held that the defendant should have offered to show this fact by this witness when he had the case, and that the offer came too late on rebuttal. There was no abuse of discretion in this ruling and hence it cannot be disturbed.

We find that the instructions upon which the case was submitted to the jury stated the law correctly and embraced all of the issues presented by the pleadings and the evidence, and hence no prejudicial error was committed in the instructions given to the jury.

The court properly refused to direct a verdict and to grant a new trial.

*By the Court.*—Judgment affirmed.

BARNES, J. (*dissenting*). It is impossible to tell upon what evidence the jury relied in finding that the surety was not liable on the note of June 16th. The jury was not instructed that a renewal of the two notes first given, after a revocation of the guaranty, and without the consent of the surety, would discharge the latter, and that if revocation were found as a matter of fact a verdict should be returned for the defendant, and we have no means of knowing what the result of such an instruction would have been. Indulging in the presumption most favorable to support the judgment, it is that the jury found that some time before the last note was given the defendant advised the plaintiff to make no further loans on the strength of the guaranty. It seems to me that after this notice was given the guaranty ceased to be a continuing one. As to all loans made before the notice was given defendant might be liable. But I think the creditor had no right to extend the time of payment of the debt and renew the notes which evidenced it without the consent of the surety after the guaranty had been repudiated. It is needless to cite authority to the proposition that the liability of a surety is *strictissimi juris,* or that an extension of the time of the payment of an obligation without the assent of the surety ordinarily operates to discharge him.

I think the judgment should be reversed on another ground. The defendant requested the court to charge the jury in reference to the two notes first given, as follows:

"I also charge you that any extension of time of the other two notes after the bank was notified that defendant would not be bound by reason of said guaranty, if you find that they were extended without the knowledge or consent of said de-

fendant, such renewals on the part of the bank were unwarranted and the defendant is discharged from any liability thereon."

There was sufficient evidence to support a finding of the jury to the effect that the plaintiff was advised by the defendant that he repudiated and refused to be bound by the guaranty. There being such evidence, the instruction asked was correct as a proposition of law and material as a matter of fact. Such an instruction might well have had a controlling weight with the jury. I think it reasonably appears from the record that exception was taken to the refusal of the court to give the charge above quoted, and that the exception is properly before this court for consideration.