was for the purpose of apprising its manager whether water was found feasible for use. We must construe the agreement in the light of the object sought to be obtained. I think, therefore, that the judgment should be reversed.

Judgment reversed, and a new trial ordered on the law and facts before another referee, with costs to appellant to abide event. All concur, except KRUSE, J., who dissents in a memorandum.

KRUSE, J. (dissenting memorandum for affirmance). It is reasonably certain that either the plaintiff's father, who was in charge of the drilling of the well, did not make a proper test for water in drilling the 20 feet to the rock, or else that he purposely misrepresented to the defendant the actual facts regarding the tests, for, when the second well was drilled, a couple of feet from the first, an abundant supply of water was found before reaching the rock. It is true that it was roily, and that there was quicksand, and very likely it was thought, in view of the shallowness of the well, it would be more practicable to dig a well and stone it up, as was done. But, if the plaintiff had made the tests and furnished the information in the first instance, as the contract required him to do, the defendant could have then determined whether to proceed with the drilling or to do precisely what was done after it obtained the information regarding the supply of water, when the second well was drilled. The statement of the person in charge of the drilling of the well that there was no water there, or just enough to wet the drill, when it appears that in the very place water flowed into the well subsequently made at the rate of 30 gallons per hour, seems quite incredible. At all events, I am not willing to say that the referee was not justified in finding against the plaintiff upon that question.

Of course, it is unfortunate that the plaintiff should lose his pay for the extra drilling, but it is unjust that the defendant should pay for something which is worthless, and which would probably not have been done had the plaintiff made the tests and given accurate information regarding the presence of water.

I think the referee's findings are sustained by the evidence, and that the judgment should be affirmed.

---

FIRST NAT. BANK OF WATERLOO v. STORY.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1909.)

1. PRINCIPAL AND SURETY (§ 71*) — CONSTRUCTION OF BONDS — LIABILITY OF SURETY.

Stockholders of a corporation issued annually to a bank bonds, guaranteeing the prompt payment at maturity of notes and obligations executed by the corporation, which the bank had or which it might purchase within one year from the date of each bond, and each bond contained a limitation of liability to $15,000 and interest, and provided that it was security to the bank for any indebtedness due to it from the corporation. *Held*, in the absence of evidence to the contrary, that each bond was an

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

independent agreement, and a bond of one year was not terminated by the execution of a new one for the following year.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 117; Dec. Dig. § 71.*]

2. PRINCIPAL AND SURETY (§ 139*) — ACTION AGAINST SURETY — DEMAND ON PRINCIPAL.

Where the principal was a bankrupt, a demand on him for the payment of the obligation was not necessary to sustain an action against the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 388; Dec. Dig. § 139.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Seneca County.

Action by the First National Bank of Waterloo against Leonard Story. From a judgment (53 Misc. Rep. 429, 103 N. Y. Supp. 233) in favor of plaintiff, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE and ROBSON, JJ.

George E. Zartman, for appellant.

J. N. Hammond, for respondent.

SPRING, J. The Waterloo Organ Company was a domestic corporation doing business with the plaintiff bank, and for a time prior to 1902 the defendant was a stockholder of said corporation. On the 31st day of January, 1901, he, with several others, signed a bond to said bank whereby they jointly and severally guaranteed "the prompt payment at maturity of each and all the notes, checks, drafts, bills of exchange, and other obligations in writing of every name and kind, made, signed, drawn, accepted or indorsed by the said Waterloo Organ Company, which the said bank now has, or which it may hereafter have, hold, purchase or obtain within one year from date hereof, but our liabilities hereunder shall not at any time exceed the sum of fifteen thousand dollars ($15,000.00) and interest thereon." The instrument further provides:

"This instrument is intended to be a full, complete and perfect security and indemnity to the said bank to the extent and for the time above stated, for any indebtedness or liability of any kind owing by the said company to it from time to time, and to be valid and continuous without any other or further notice to us or to any of us."

In 1894 the Waterloo Organ Company duly issued and put upon the market certain of its bonds, each of the denomination of $500; and in July, 1901, the plaintiff purchased 15 of these bonds maturing in December, 1904, for which it paid the face value. The organ company became insolvent in July, 1902, and the plaintiff has recovered against the defendant in this action at law on the contract of indemnity the full sum due on these 15 bonds. The bonds were liabilities within the scope of the guaranty contract, and, according to its terms, the plaintiff is entitled to recover, unless some affirmative defense has been proven. Prior to the execution of the contract in suit, the defendant for several years in conjunction with others interested in the organ

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

company had delivered to the plaintiff bonds each for the same general purpose, and those in 1899 and 1900 were precisely like the one in controversy. These were issued annually except in the year 1900, and early in the year and on the strength of them loans were made to the organ company, chiefly on its own promissory notes or those of its customers. On January 30, 1902, the last of these series of guaranty contracts was made and delivered to the bank, and which was also executed by the defendant. In July, 1904, and before the maturity of any of the bonds in suit, an action was commenced against the defendant on the contract of 1902, and a verdict was directed for the plaintiff for about $15,000, besides interest. The recovery in that action was based wholly on obligations of the organ company purchased by the plaintiff after the delivery of the indemnity agreement for that year. No judgment was entered on the verdict, but the amount was paid by the defendant.

It is claimed that the acceptance of the guaranty agreement in January, 1902, extinguished its predecessor for the year 1901. In other words, when one agreement was given, it was in lieu of the one theretofore existing. If such were the fact, of course, the present judgment cannot be sustained. There is nothing in any of the instruments indicating that it was intended to operate instead of the one previously given. There was no cancellation or surrender of one contract when another was accepted. There was no arrangement or understanding that one agreement was to be the renewal of another. Each contained the clause referring to the obligations of the organ company such as the bank "now has, or which it may hereafter" acquire "within one year from the" date of the instrument, not exceeding $15,000. Each agreement was apparently intended to cover the obligations obtained during the year after the contract was executed; and, if the contract for the previous year was inadequate to cover the losses of that year, the guaranteeship extended back and included those. The bank was loaning money to the organ company in which these obligors were interested. They were willing to become responsible for the liabilities of their company to the bank, only they restricted their accountability to the sum of $15,000 on each particular bond and not beyond the ensuing year. The effect to be given to one of a series of guaranty bonds depends upon the intention of the parties. Unless the evidence shows that the new contract was designed to destroy the one outstanding, it will be regarded as an independent and distinct agreement. We think the weight of authority is decidedly in favor of this proposition.

The First National Bank of Buffalo was designated as the state depositary of its canal tolls. One Cushing was a stockholder of the bank, and in 1880 signed a bond, as he had for several years preceding, with others, jointly and severally guaranteeing to the state the payment of the money deposited and the performance of the agreement in pursuance of which the bank was made the custodian of the moneys. A new bond was given each year. In 1881 Cushing was not a stockholder of the bank, and refused to join in the bond for that year. The old bond was never surrendered or canceled, and there was no agreement to release Cushing upon the acceptance of the new one.

The bank failed in April, 1882, owing the state a large sum, and Cushing was sued on the bond, and defended on the ground that the new bond was in lieu of its predecessor, and therefore extinguished it, and the referee before whom the action was tried decided in his favor. The judgment was reversed on appeal (People v. Cushing, 36 Hun, 483); the court holding that, in the absence of evidence showing that the second bond was accepted in lieu of the previous one or that the first was surrendered or canceled, Cushing was not discharged from liability on his bond. In 1882 another bond was accepted by the state. An action was commenced in the name of the people of the state against the sureties on the two bonds for 1880 and 1881, and the defense was again raised that the receipt of the last bond annulled those previously given. The Court of Appeals held otherwise. People v. Lee et al., 104 N. Y. 441, 10 N. E. 884. The court say at page 448 of 104 N. Y., at page 886 of 10 N. E.:

"The referee having failed to find that the guaranty of 1882 was received by the state in satisfaction of previous guaranties, there is no evidence in the case authorizing this court to hold that any such discharge was intended or effected, and no foundation for the claim that the sureties on the guaranty of 1881 were discharged by the acceptance by the state of the guaranty of 1882."

Barnes was a surety on the bonds for 1880 and 1881. After his liability was established and paid, his executors sought to compel contribution of Cushing, and the same question was again reviewed, and the principle of the original case (People v. Cushing, supra) was sustained. Barnes v. Cushing, 168 N. Y. 542, 61 N. E. 902. There is not a particle of evidence tending to show that the parties believed that the contract of 1901 terminated when the one for 1902 was received by the bank. The burden was upon the defendant to make that proof in order to maintain his defense. The inferences are the other way. There is no ambiguity in the contract itself, and there is nothing in it upon which the position of the defendant can be based. There was no evidence or oral agreement supporting any such contention. There was no delivery over of the preceding contract. There was no proof of accord and satisfaction, or of any compromise agreement or of any novation. On its face each is an independent agreement, and, so far as the evidence shows, it was to remain valid and in full force until the liability for which it was a guaranty should be ascertained and paid.

It is claimed the fact that three of these contracts similar in form were given in the year 1900 indicates that each was in lieu of its predecessor. Again, we are confronted with lack of proof. There is nothing to show the extent of the indebtedness of the organ company during the year 1900. One year the loans to the company, exclusive of the bonds, amounted to $60,000. For aught that appears, the obligations accepted by the bank during the year 1900 may have been largely in excess of $15,000 and new guaranty agreements may have been given to protect this increased indebtedness. Certainly, if each was a renewal, the old one would be surrendered or its cancellation provided for. The defendant was a banker, and consequently familiar with business affairs. It is not reasonable to believe that he allowed the contract for 1901 to remain in the possession of the plaintiff and

without anything to establish its vitality had expired, if such was his purpose when he executed the agreement in January, 1902. The recovery on the last guaranty bond is not a bar to the maintenance of this action. The bonds in suit had not then matured, and the action was one at law and confined to the notes negotiated during the year 1902. Nor was any demand necessary, as it would be useless to ask payment of the bankrupt organ company. First National Bank v. Bacon et al., 113 App. Div. 612, 98 N Y. Supp. 717, affirmed 189 N. Y. 533, 82 N. E. 1126; Weber v. Wallerstein, 111 App. Div. 693, 97 N. Y. Supp. 846.

The judgment should be affirmed, with costs

Judgment affirmed, with costs. All concur, except McLENNAN, P. J., who dissents.