FIRST NAT. BANK OF WATERLOO v. STORY.

(Supreme Court, Trial Term, Seneca County. January 13, 1913.)

1. GUARANTY (§ 36*)—BONDS—CONSIDERATION.
   Where the stockholders of a corporation entered into a guaranty contract, which under a general provision guaranteed the payment to a bank of any obligation of the corporation, which the bank might purchase, and by a preceding specific provision, taken together with the expressed purpose of the contract indicated an intention to guarantee the payment of any notes, drafts, etc., taken by the bank for the benefit of the corporation, the specific provision and purpose controlled, and the guarantors were not liable for the payment of bonds of the corporation sold by it to a third party and delivered by him to the bank as security for his own indebtedness, though the bank subsequently, but with knowledge that the corporation was on the verge of bankruptcy, released the third party and took the bonds for his indebtedness, where the corporation was not interested in or benefited by the transaction between the bank and the third party.
   [Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38–45; Dec. Dig. § 36.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. APPEAL AND ERROR (§ 1097*)—LAW OF CASE.

A statement in a former opinion in an action on a guaranty that certain bonds were covered by the guaranty was not conclusive on a subsequent appeal, where it appeared that such question was not in issue at the former trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368, 4427; Dec. Dig. § 1097.*]

Action by the First National Bank of Waterloo against Leonard Story. Judgment for defendant.

Bacon & Huff, of Waterloo (W. Smith O'Brien, of Geneva, of counsel), for plaintiff.

George E. Zartman, of Waterloo (Charles A. Hawley, of Seneca Falls, of counsel), for defendant.

SUTHERLAND, J. This action is upon a joint and several bond, signed by defendant and others, guaranteeing to the plaintiff payment of certain obligations of the Waterloo Organ Company. The case was first tried in September, 1906, and judgment was awarded to plaintiff (53 Misc. Rep. 429), from which an appeal was taken to the Appellate Division, where the judgment was affirmed (131 App. Div. 472, 115 N. Y. Supp. 421). Upon appeal to the Court of Appeals, the judgment was reversed (200 N. Y. 346, 93 N. E. 940, 34 L. R. A. [N. S.] 154, 21 Ann. Cas. 542), and a new trial ordered, upon the ground that the complaint did not allege, and the plaintiff did not prove, a demand before suit. After the reversal in the Court of Appeals, the complaint was amended, setting up a demand, and upon the second trial the demand has been proved.

[1] The guaranty bond in suit was one of a series of bonds extending from 1896 to 1902; a change in the form used being made in 1899. The instrument sued on was given in January, 1901, to cover the ensuing year, and is in form as follows:

"Whereas, the Waterloo Organ Company, a domestic corporation formed under the laws of this state, desires to obtain loans, discounts, credits, and other pecuniary accommodations of and from the First National Bank of Waterloo, N. Y.; and

"Whereas, the said bank requires security for such loans and discounts and for all other indebtedness or liability of the said company to it; and

"Whereas, the undersigned are interested in said company as stockholders, or otherwise, and are willing to become such security:

"Now therefore for the purpose aforesaid and in consideration of the sum of one dollar to each of us duly paid at the ensealing and delivery hereof, and for other good and valid consideration, the receipt of which is hereby acknowledged and confessed, we, the undersigned, do hereby jointly and severally, for ourselves, and our and each of our heirs, executors, and administrators, guarantee and warrant unto the said bank, its successors and assigns, the prompt payment at maturity of each and all the notes, checks, drafts, bills of exchange, and other obligations in writing, of every name and kind, made, signed, drawn, accepted, or indorsed by the said Waterloo Organ Company, which the said bank now has, or which it may hereafter have, hold, purchase, or obtain within one year from date hereof; but our liabilities hereunder shall not at any time exceed the sum of fifteen thousand dollars ($15,000), and interest thereon.

"And in case default is made in the payment at maturity of any of the above mentioned obligations, or in the payment of any lawful claim or de-

mand held by said bank against said company, we do hereby jointly and severally covenant, promise, and agree to pay the same to the said bank, its successors or assigns, upon demand.

"This instrument is intended to be a full, complete, and perfect security and indemnity to the said bank, to the extent and for the time above stated, for any indebtedness or liability of any kind owing by the said company to it from time to time, and to be valid and continuous, without order or further notice to us, or to any of us.

"In witness whereof, we have hereunto set our hands and our respective seals this 31st day of January, A. D., one thousand nine hundred and one.

> "A. C. Reed.
> "Malcolm Love.
> "F. W. Hulbert.
> "Francis Bacon.
> "Leonard Story.
> "C. G. Reed.

"Acknowledged on same day by all of the signers."

Upon the first trial it was contended by the defendant that each of these bonds was a renewal of the previous bond, and was given in substitution therefor, and that the total liability of the grantors on all the series did not exceed $15,000, which was the penalty of each bond. Before his suit, upon a bond similar in form given in 1902, the defendant paid $15,000, the full amount thereof, which payment he maintained extinguished his entire liability. This defense the trial court, the Appellate Division and the Court of Appeals held to be untenable, there being no evidence, either internal or external, to show that the new bond of 1902 was designed to take the place of and extinguish the former one made in 1901, which is in suit.

Upon the second trial some attempt was made to supply evidence to show that each bond was given in extinguishment or to take the place of the preceding bond; but the evidence does not seem to me sufficient to sustain the contention of the defendant in this respect.

The obligation of the Waterloo Organ Company, which the plaintiff seeks to hold the defendant for under his guaranty bond of 1901, consists of 15 bonds, of $500 each, of the Organ Company, issued December 1, 1894, being a part of a series of 80 bonds then issued or authorized, which were payable December 1, 1904, with interest at 6 per cent., payable semiannually, at the First National Bank of Waterloo. Said 15 bonds were sold by the Organ Company and became the property of one Philip M. Kendig. Some time before 1901 (the precise date was not disclosed), Kendig gave his note to the plaintiff for $7,500, and put up these 15 bonds of the Organ Company as collateral to said note. The bank held Kendig's note, with the 15 bonds as collateral, at the time the defendant executed the guaranty bond January 31, 1901, which is in suit.

The full history of the transactions between Kendig and the bank was not disclosed at the trial, but it is evident that the indebtedness of Kendig to the bank was not incurred for the benefit of the Waterloo Organ Company, and it does not appear that the Organ Company had any knowledge of the matter or profited in any way thereby.

July 24, 1901, the bank surrendered to Kendig his $7,500 note, and retained in payment therefor these 15 bonds of the Organ Company, which had been held by the bank up to that time as collateral. The

Organ Company does not seem to have had anything to do with that arrangement, and was in no way affected by it.

In July, 1902, the Organ Company was adjudged a bankrupt. Its financial condition had been unsatisfactory for several years before that time, to the knowledge of the president of the plaintiff, who, in urging the defendant to renew the guaranty bond in January, 1900, stated that the Organ Company would wind down its business, and could do so better if the guaranty were continued than if it went into bankruptcy. It is difficult to conceive of any reason why the bank should give up its claim upon Kendig and take absolute title to the bonds, not due for 3½ years, of a concern known to the bank to be on the verge of bankruptcy, except to get in under the guaranty; and one's sense of fair play is shocked by such an attempt, and under the law of the case I do not think the plaintiff is entitled to succeed.

The guaranty bond was intended to cover only loans made and obligations of the Organ Company purchased by the bank for the benefit of the Oregon Company. There was no reason why these guarantors in 1901 should become sureties for the Organ Company upon its bonds, already sold to third persons, which would not fall due till December, 1904. The preamble shows clearly that the guaranty bond was given to secure accommodations for the Organ Company at the bank, so the company could continue its business for a time. The Organ Company was not benefited by the deal between Kendig and the bank, and it was not one of the kind of transactions contemplated by the parties as an inducement to sign the guaranty. In my opinion, to hold the defendant upon this guaranty for the 15 bonds acquired by the bank from Kendig would be a gross injustice, as neither within the intention of the parties when the guaranty bond was made nor within the fair interpretation of that instrument.

While the general words "any indebtedness or liability" and "obligations * * * of every name and kind * * * purchased or obtained," standing alone, would be sufficient to cover the 15 bonds acquired by the bank from Kendig, yet when they are read in the light of the manifest purpose for which the instrument came into existence, and in connection with the specific words in the guaranty which refer to notes, drafts, etc., of the Organ Company, taken by the bank for the benefit of the Organ Company, these general words should be limited in application to obligations taken by the bank for the benefit of the company. In Brandt on Suretyship & Guaranty, par. 103, it is said:

"When specific terms are followed by a general term, the general term is restricted to things of the same kind or class, and general terms are controlled by recitals as to the purpose of the parties."

And see note 36 under that section, third edition.

[2] It would seem that on the first trial the defendant placed its entire reliance upon the defense of no demand, and upon his claim that the total aggregate liability could not exceed $15,000, which defendant paid on the bond of 1902. Neither in the opinion at Trial Term nor in the Court of Appeals is the question discussed whether the guaranty bond was intended to cover obligations not taken by the

bank for the benefit of the Organ Company. There is a clause in the opinion of the Appellate Division to the effect that the guaranty covers obligations such as the 15 bonds in question. It appears, however, from an inspection of the pleadings which were before the court on the first trial, that the allegation of the original complaint to the effect that said 15 bonds were part of the obligations in writing which are referred to and which are covered by the guaranty, was not denied in the answer. The answer to the amended complaint now raises that issue, which really was not before the court on the former hearings. Furthermore, the evidence on the first trial did not disclose the source from which the bank obtained the 15 bonds, nor the circumstances attending their purchase. Accordingly, I do not feel at all constrained by the paragraph in the Appellate Division opinion to the effect that the 15 bonds are covered by the terms of the guaranty.

Judgment is therefore ordered for the defendant upon the merits.