No. 20,931.

THE GERMAN AMERICAN STATE BANK, *Appellee,* v. CHESTER WOODWARD, *Appellant.*

SYLLABUS BY THE COURT.

1. BASEBALL ASSOCIATION—*Indebted to Bank—Contracts to Indemnify Bank—Individual Liability of Indemnitors.* One of a number of parties who each contracts to indemnify a bank against loss to the amount of a certain share of that part of an obligation left after the application of the proceeds of a sale of certain property, or to deposit a sufficient sum to assure the payment of that share of the obligation, is not discharged by reason of the fact that the amount deposited in good faith by another of the contractors finally turns out to be insufficient to pay his share.

2. SAME. A baseball association was indebted to a bank. Directors of the association individually indemnified the bank against loss, each to the amount of one-seventh of the indebtedness remaining after the application of the proceeds derived from the sale of the assets of the association. The sale contemplated was a private sale. All the assets had been mortgaged to the bank. They were sold to the bank at chattel-mortgage sale for $1000. About five weeks later the bank sold the assets for $7500. *Held,* that in an action against the indemnitors the $7500 should be credited on the debt of the association to the bank, and judgment should be rendered against the indemnitors for the remainder of the debt, in accordance with the terms of their contracts.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed June 9, 1917. Modified.

*T. M. Lillard, Bennett R. Wheeler,* and *John L. Hunt,* all of Topeka, for the appellant.

*Edwin D. McKeever,* and *A. E. Crane,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This action was brought to recover on three contracts. The case was tried by the court without a jury. The court made findings of fact and conclusions of law, and rendered judgment in favor of the plaintiff. The defendant appeals.

Such of the findings of fact as are necessary for a consideration of the questions presented, are as follows:

"The Topeka Baseball Association was and is a corporation organized under and by virtue of the laws of the state of Kansas.

"That on the fifth day of August, 1912, the said Topeka Baseball Association was indebted to the plaintiff in the sum of $9800, evidenced by certain promissory notes.

"That in pursuance of the request of the state bank commissioner of the state of Kansas, the plaintiff demanded further security of the directors of the Topeka Baseball Association for the payment of their indebtedness to the plaintiff, and in pursuance thereto, a certain contract in writing was executed and delivered to the plaintiff, a copy of which is as follows:

"'In consideration of the German-American State Bank having agreed to carry the loan heretofore made by the Topeka Baseball Association, amounting now to nine thousand and eight hundred dollars, until the franchise, property and players of said association can be sold, I hereby agree to indemnify said bank against loss to the amount of one-seventh of the balance of said sum remaining due after the application of the proceeds of the sale of said franchise, players and all other property and assets of said association to the payment of said indebtedness; provided, however, and this agreement is upon the express condition that each of the remaining six directors of said association shall obligate himself to pay one-seventh of said deficit after exhausting the assets of said association as aforesaid, or shall deposit a sufficient sum to assure the payment of his proportion of said deficit, and this agreement shall not be binding upon the undersigned until all of said directors have obligated themselves as aforesaid.

"'Dated Topeka, Kansas, August 5, 1912.

(Signed)          CHESTER WOODWARD.
                  S. J. BEAR.
                  ARCH M. CATLIN.
                  F. P. METZGER.
                  GUILFORD DUDLEY.
                  C. B. MERRIAM.'

"Afterwards and on the 17th day of August, 1912, the said baseball association borrowed of the plaintiff the further sum of $3000, which was evidenced by a note of that date.

"That at or about the time the plaintiff loaned the baseball association the said sum of $3000, six of the directors of said baseball association individually executed an agreement of that date, which agreement is as follows:

" 'In consideration of the German-American State Bank having agreed this day to loan to the Topeka Baseball Association, at our request $3000, additional to the $9800 already loaned to the said association, I hereby agree to indemnify said bank against loss to the amount of one-fifth of the balance of said sum of $3000 remaining due and unpaid after the application of the proceeds of the sale of the franchise, players and other property and assets of said association to the payment of all indebtedness due to the German-American State Bank; provided, however, that in the event that the two directors, Mr. Henry Auerbach and Mr. Chester Woodward, shall also sign this agreement to indemnify, or shall deposit a sufficient sum with the German-American State Bank to assure the payment of his proportion of said deficit, then and in that event this agreement shall not be binding upon any of the undersigned for more than one-seventh of said deficit.

" 'Dated Topeka, Kansas, August 17, 1912.

(Signed)       ARCH M. CATLIN.
                       S. J. BEAR.
                       C. B. MERRIAM.
                       GUILFORD DUDLEY.
                       F. P. METZGER.
                       CHESTER WOODWARD.'

"The defendant Woodward was absent from Topeka at the time the other parties signed the agreement, but signed the same on his return three or four weeks later.

"That Henry Auerbach on December 16, 1912, for the purpose of complying with the provisions of said contracts of August 5th and August 17, 1912, deposited with the plaintiff the sum of $1100.00 to assure the payment of his proportion of said deficit, and that said agreement and deposit was made by the said Auerbach, the remaining director of the Topeka Baseball Association, and the same was accepted by the bank in compliance with the terms of said agreement, and at said time taking into consideration the value of the property, franchise and players of the Topeka Baseball Association, it appeared upon reasonable grounds to be a sufficient amount to pay one-seventh of such deficit, had the property been sold at the time.

"That on the 28th day of September, 1912, the Topeka Baseball Association borrowed from the plaintiff an additional sum of $2000, which debt was evidenced by demand note executed by the baseball association in the sum of $2000.

"That to secure the payment of said $2000, or any deficit that might result after the sale of the franchise, property and players of the Topeka Baseball Association and the application of the proceeds to the indebtedness of said ball association to the plaintiff, the directors, acting individually, entered into a further agreement with the plaintiff, a copy of said agreement is as follows:

" 'In consideration of the German-American State Bank having agreed this day to loan to the Topeka Baseball Association at our request $2000, additional to the $9800 and $3000 already loaned to the said association, I hereby agree to indemnify said bank against loss to the amount of one-sixth of the balance of said sum of $2000 remaining due and unpaid after the application of the proceeds of the sale of the franchise, players and other property and assets of said association to the payment of all indebtedness due to the German-American State Bank; provided, however, that in the event that the absent director, C. B. Merriam, shall also sign this agreement to indemnify, or, shall deposit a sufficient sum with the German-American State Bank to assure the payment of his proportion of said deficit, then and in that event this agreement shall not be binding upon any of the undersigned for more than one-seventh of said deficit.

" 'Dated Topeka, Kansas, September 28, 1912.

(Signed)          ARCH M. CATLIN.

S. J. BEAR.

CHESTER WOODWARD.

GUILFORD DUDLEY.

F. P. METZGER.

C. B. MERRIAM.'

"That Henry Auerbach, September 30, 1912, in furtherance of the agreement, deposited with the plaintiff the sum of $300 to assure the payment of his proportion of said deficit, after the sale of the property of the Topeka Baseball Association, and the proceeds thereof were applied to the indebtedness of said Association to the plaintiff, and that said deposit was made by the said Henry Auerbach in compliance with said agreement, and was so accepted by the plaintiff, and that under the circumstances existing at that time and in view of the value of the property of the Topeka Baseball Association, it appeared upon reasonable grounds to be sufficient to pay one-seventh of the deficit if the property had been sold at that time for its value and the proceeds applied upon said indebtedness.

"At the time of the execution of each of said contracts of August 17th and September 28th, 1912, the indebtedness from the baseball association to the plaintiff therein referred to was secured by a mortgage to the plaintiff covering the property of the association, and it was the understanding of the parties signing said contracts that the sale of the assets of the association, referred to therein, should be a private sale and not a forced sale under the mortgage.

"After the execution of said contracts and at the request of the plaintiff said ball association executed and delivered to the plaintiff a new mortgage dated June 1st, 1914, covering all of its property and assets, including the franchise of the said ball association, for the purpose of securing the payment of the debt then owing to the plaintiff by the said ball association. . . .

"That on the 30th day of June, 1914, five of the directors of said baseball association, one of whom was the defendant in this action, act-

ing individually, executed and delivered to the plaintiff a contract, a copy of which is as follows:

"'We, the undersigned, in consideration of the German-American State Bank of Topeka, Kansas, renewing the existing indebtedness of the Topeka Baseball Association, and extending the time for the payment of the same to March 1, 1915, do hereby give our consent to the said renewal, and we do hereby further agree that our individual guarantees protecting said German-American State Bank against any loss, each to the extent of one-seventh of any balance or deficiency of the sum remaining due upon said debt after the application of the proceeds of the sale of the franchise, players and all other property and assets of said association to the payment of said indebtedness, shall continue and shall cover any renewal notes covering said indebtedness executed by the Topeka Baseball Association.'

"That afterwards and prior to the 18th day of January, 1915, the plaintiff, deeming itself insecure, declared the indebtedness due, took possession of the property described in the mortgage, and in pursuance of the terms of the mortgage, and after due notice, in accordance with the statutes of the state of Kansas, sold, in bulk, at public sale, all of the property and assets, including the franchise of the Topeka Baseball Association, for the sum of $1000.

"The sale conducted under said mortgage was held in the back or directors' room of the plaintiff bank at the place stated in the written notice of sale introduced in evidence, marked P-15, and made a part hereof. Copies of this notice were posted on telephone or telegraph poles within two or three blocks of the bank and place of sale at least ten days prior to the sale, said poles being public places within said city. The place of sale was about a mile and a half from the ball park owned by the baseball association, the lease covering which and all the buildings and improvements thereon were covered by said mortgage and sold at said sale. None of the property sold was exhibited at such sale.

"The property of the Baseball Association sold at said sale had no cash salable value at the time of such mortgage sale, or at the time it was sold to Savage as hereinafter found. In connection with the franchise the property has a contingent value of from five thousand to ten thousand dollars, depending largely on the sale of players held under contract.

"After the sale of said property, and with the knowledge of the circumstances of the sale and price for which the property was sold, the baseball association, acting through its directors, and upon the proposition made by the plaintiff that it and its directors should have ten days within which to repurchase the property for $10,000, which was to be in full payment of the indebtedness to the bank, tried to sell the property to one Savage; being unable to sell the property within ten days, a further extension of time was asked for by them within which to sell the same, which further extension the plaintiff refused to grant.

"On March 3, 1915, the plaintiff, through one of its officers, sold to John Savage the property purchased at the mortgage sale by written contract of sale of said date, introduced in evidence and marked D-22, and made a part hereof, which sale was for the sum of $7500, payable in a note of a new baseball corporation to be formed, for $5000, indorsed personally by Savage, due in two years, with interest, with $15,000 of the capital stock of the new corporation deposited with the plaintiff as collateral security to the note, the balance of the purchase price, $2500, to be paid in stock of said new corporation, as appears by the terms of said contract of sale.

"The plaintiff had performed the conditions and agreements of the contract of indemnity set up in the amended petition of plaintiff. It did not, however, wait upon the baseball association for the payment of all the indebtedness until March 1, 1915, the date named in the contract of June 30, 1914, a copy of which is set out in finding fourteen, but declared the indebtedness due and sold the property in January, 1915, as hereinbefore found, applying the sale price, $1000, on the indebtedness. The balance of the indebtedness has not been paid.

"The defendant is indebted to the plaintiff in the sum of $2278.72, the same being one-seventh of the deficit remaining unpaid after the application of the proceeds of the sale of the assets and property of the Topeka Baseball Association to the indebtedness hereinbefore found of the association to the plaintiff bank."

1. The defendant urges that because Auerbach did not deposit a sum sufficient to discharge one-seventh of the obligation, the defendant is not liable on either of the first two contracts. The obligations described in these contracts amounted to $12,800, one-seventh of which was more than $1800. Auerbach deposited $1100 to cover his share of these obligations. There was nothing to show that either Auerbach or the bank fraudulently did anything to avoid Auerbach's depositing a larger sum. It must be assumed that they acted in good faith and took into consideration the value of the property of the defendant association. The property at that time had some value. The defendant should not be released from his obligation on account of the smallness of Auerbach's deposit, until it is shown that Auerbach or the defendant, or both, acted without good faith in the matter.

2. The defendant contends that he is not liable on either of the contracts for the following reasons: That there was no sale of the property such as was contemplated in the contracts; that the sale took place before March 1, 1915, in violation of

the contract of June 30, 1914, and that the judgment rendered against him was for more than one-seventh of the loss sustained by the plaintiff. These propositions are so interwoven that they can best be discussed and disposed of together.

The chattel-mortgage sale was a forced sale, made in violation of the spirit of all the agreements between the plaintiff and the defendant. The sale was within the terms of the contract between the plaintiff and the baseball association. The liability sought to be enforced was not the liability of the baseball association, but that of the defendant. The defendant's contract was to indemnify the plaintiff against loss. The loss sustained by the plaintiff was the difference between the value of the property at the time it was sold to Savage, and the amount of the plaintiff's claim against the baseball association. It was difficult to determine the value of the property and of the franchise sold to Savage. The amount for which the property sold at the chattel-mortgage sale can not be said to represent its value at that time. The amount named as the price paid by Savage for the property and the franchise was probably as near their value as could be ascertained. That amount was $7500.

Auerbach, by depositing $1100 to meet his share of the obligation under the contracts set out in the fifth and sixth findings of fact, and by depositing $300 to meet his share of the obligation under the contract set out in the tenth finding of fact, complied with those agreements on his part; and if the amounts deposited by him were not sufficient to pay one-seventh of the entire obligation, the loss occasioned thereby must be sustained by the plaintiff, and can not be used to augment the obligation of Woodward. It does not appear from the abstract how this matter was determined by the trial court.

The amount of $7500 should be deducted from the total debt of the baseball association, the payment of which was guaranteed by the defendant and his associates, and judgment should be rendered against the defendant for one-seventh of the remainder.

The trial court is directed to modify its judgment as herein indicated; and upon being so modified, the judgment is affirmed.