No. 26,568.

A. L. HEADLEY, PHILLIP ALBRECHT and J. R. LAMBERT, *Appellants,* v. C. M. POST, S. W. ROUSH and C. H. SARGENT et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. PRINCIPAL AND SURETY—*Contribution Between Cosureties—Contracts of Successive Bank Officers.* Where two successive groups of officers and directors of a county seat bank executed their separate personal contracts of guaranty and indemnity to another bank, which served the first bank as its metropolitan correspondent, to protect it from all loss, expense or damage it might sustain on notes, drafts or similar commercial paper purchased from or rediscounted for the first bank, and the first bank became insolvent, and the obligees of one group prudently settled and paid to the metropolitan bank a sum of money which was accepted in full satisfaction of all claims against the first bank for which either or both groups of obligors were bound, it is held, in the absence of any agreement that the later of the successive contracts of guaranty and indemnity was to supersede and discharge the liability of the signatories to the earlier, the group of parties who satisfied the metropolitan bank's just demands against the first bank have a cause of action against the defendant signatories to the other contract for contribution.

2. SAME—*Contribution—Guaranty Contracts of Successive Bank Officers.* In 1919 a group of officers and directors of the Farmers State Bank of Smith Center executed their joint and several personal obligation to the Live Stock State Bank of Kansas City, Mo., to protect it against all loss and damage which it might sustain on any notes, drafts, etc., which it might purchase from or discount for the Smith Center bank. The contract was to continue until terminated by notice and otherwise according to its written terms. The contract was never so terminated, but in 1922 another group of officers and directors succeeded the first group as managers of the bank, and they executed to the Kansas City bank a substantially similar obligation to that executed by the first group. In 1923 the Smith Center bank failed, and the second group of guarantors and indemnitors made a prudent and advantageous settlement with the representatives of the Kansas City bank as to all obligations of the Smith Center bank for which the obligors of either or both groups were bound, and received an assignment of all commercial paper negotiated by the Smith Center bank to the Kansas City bank. The assignees having realized on such commercial paper as far as practicable called on the first group of guarantors and indemnitors for contribution. *Held,* there should be an accounting between the groups, and the second group who have paid are entitled to contribution from the first group, and the latter's defense of nonliability cannot be sustained.

Guaranty, 28 C. J. pp. 936 n. 40, 937 n. 41, 993 n. 58, 1039 n. 19, 1040 n. 20. Indemnity, 31 C. J. pp. 426 n. 40, 427 n. 41, 443 n. 40. Principal and Surety, 32 Cyc. pp. 73 n. 21, 74 n. 24, 277 n. 60.

Headley v. Post. ·

Appeal from Smith district court; WILLIAM R. MITCHELL, judge. Opinion filed March 6, 1926. Reversed.

*A. W. Relihan, T. D. Relihan* and *J. T. Reed,* all of Smith Center, for the appellants.

*E. S. Rice* and *W. S. Rice,* both of Smith Center, for the appellees.

The opinion of the court was delivered by

DAWSON, J.:  This was an action by one group of guarantors and indemnitors against another group, both of which by separate instruments were pledged to a Kansas City bank to save it harmless as to all notes, drafts, bills of exchange or acceptance which it might acquire by purchase or discount from a bank in Smith Center in which the rival litigants were interested.

In 1919, the Farmers State Bank of Smith Center and the Live Stock State Bank of Kansas City, Mo., were going concerns, each doing a general banking business, the latter being the Kansas City correspondent of the former.  The Smith Center bank desired to arrange for the disposition of some of its commercial paper by sale or rediscount to the Kansas City bank; and to that end the president, cashier, and certain members of the board of directors of the Smith Center bank executed to the Kansas City bank a written contract whereby they personally guaranteed the prompt payment of all notes, drafts and bills of exchange or acceptance which the Kansas City bank might acquire from the Smith Center bank.  By further stipulation the obligors pledged themselves to indemnify and ·save harmless the Kansas City bank from all expense, loss, damage or injury arising from the purchase of any of the Smith Center bank's obligations or which might be incurred in enforcing collection thereof.  Among further recitals of the contract were these:

"This guaranty shall be a continuing one, and shall remain in full force until written notice of its revocation shall be received by the Live Stock State Bank at its office in Kansas City, Mo., and until all notes and other obligations aforesaid purchased or accepted by it before receiving notice of such revocation shall have been fully paid; provided, however, that the liability of the undersigned to the said Live Stock State Bank shall not exceed at any one time the aggregate sum of fifteen thousand 00/100 dollars, . . .

"For the purpose of identification it is agreed that this guaranty shall apply to all notes, or other evidence of debt, which bear the indorsement of the Farmers State Bank, Smith Center, Kan., by E. B. Cox, Cashier, or C. H. Sargent, Pres. Cashier or President.

"Witness our hands this 7 day of October, 1919, at Smith Center, Kansas.

"E. B. Cox,
"C. H. Sargent,
"T. M. Wilson,
"S. W. Roush,
"John East,
"C. M. Post,
"John W. Dannenberg."

The business dealings of the two banks were conducted pursuant to this arrangement thereafter; but in the spring of 1922 there were some changes in the official management of the Smith Center bank. C. H. Sargent, who had been president of the bank for some years, retired, and Phillip Albrecht, a farmer, became nominal president, and C. Wayne Harvey became active vice president. E. B. Cox, who had been cashier under the old management, continued in that capacity. There were also some changes in the personnel of the board of directors; and on April 4, 1922, the persons who then became actively engaged in the management of the bank executed to the Kansas City bank an instrument of guaranty and indemnity similar in all material respects to the one executed in 1919, except that the limit of the obligors' liability was specified at $30,000, and the concluding recital, date of execution and signatures were as follows:

"For the purpose of identification it is agreed that the guaranty shall apply to all notes, or other evidence of debt which bears the indorsement of Farmers State Bank, of Smith Center, Kansas, by E. B. Cox or C. W. Harvey.

"Witness our hands this 4 day of April, 1922, at Smith Center, Kansas.

"John W. Dannenberg,
"T. M. Wilson,
"J. R. Lambert,
"A. L. Headley,
"Phillip Albrecht,
"E. B. Cox,
"C. Wayne Harvey."

Late in the year 1923, both these banks became insolvent and the bank commissioners of their respective states took charge of them under authority of law. At the time these banks failed, the Kansas City bank held notes, overdrafts and other claims against the Smith Center bank aggregating a sum variously estimated by counsel for these litigants at from $24,000 to $45,000. The Missouri bank commissioner called upon the plaintiffs herein, as obligors of the guaranty and indemnity contract of 1922, to pay and redeem these notes

and claims. For the sum of $12,000 paid by plaintiffs in cash, they effected a full settlement with the authorities of the state of Missouri and *ex officio* representatives of the Kansas City bank for all the obligations of the Smith Center bank and for all the obligations of all the guarantors and indemnitors under the contracts of 1919 and 1922 or either of them; and thereupon plaintiffs received an assignment of all the rights of the Kansas City bank thereto, together with a transfer and delivery of all the commercial paper which the Smith county bank had negotiated to the Kansas City bank and which had been the basis of the demand upon plaintiffs under the contracts executed by these litigants.

Following this assignment and receipt of the assets transferred from the Kansas City bank, plaintiffs set to work to realize on them. In this they had some measure of success. They then called upon the defendants as obligors under the contract of 1919 for contribution. Dannenberg, whose name was signed to both instruments made settlement and paid to plaintiffs the sum of $2,500 as his proportionate share of the liability. Some of the defendants were and are wholly insolvent and some had left the state and were not served with process.

The foregoing narrative, by appropriate pleadings, was formulated into a cause of action by plaintiffs, as obligors of the contract of 1922 and as assignees of all the rights of the Kansas City bank, against the defendants who were obligors under the contract of 1919 and who had paid nothing and denied all liability.

The trial court heard the evidence of the parties, and made a finding as follows:

"Under the evidence and admission of the parties in this case, the court finds that there was no agreement or understanding between the Farmers State Bank of Smith Center, Kan., and the Live Stock Bank of Kansas City, and the guarantors signing the two contracts introduced in evidence, that the second contract did away with or was in full satisfaction of the first contract or that the second contract was intended by the parties to the two contracts to annul or abrogate the first contract entered into by them."

Notwithstanding this finding, the trial court entered judgment for defendants, and plaintiffs appeal.

In support of the judgment, appellees argue that they were only bound to the Kansas City bank to secure prompt payment of such notes, drafts and like instruments as bore the indorsement of the Farmers State Bank, "by E. B. Cox, Cashier," or "C. H. Sargent,

Pres. Cashier or President." That is not a fair reading of the contract. Defendants had bound themselves "to fully indemnify and save harmless the said Live Stock State Bank against all expense, loss, damage or injury arising from the purchase of any of such obligations or which may be incurred in enforcing collection of the same."

The first paragraph of the contract discloses the character of the instruments which were thus guaranteed. The contract covered "the purchase from or discount of *any* of such obligations" for the Farmers State Bank of Smith Center, Kan., with or without recourse, of notes, drafts, bills of exchange or acceptance. Defendants' obligation was not limited to a guaranty and indemnification of such obligations as might be purchased or discounted by the Kansas City bank as were indorsed by Cox, cashier, or Sargent, president. Such indorsement was a convenient means of identifying commerical paper acquired from the Smith Center bank, and to all of which there would be no subsequent controversy as to whether such notes or other evidences of debt were protected by the contract. But that concluding clause of the contract avows that its *purpose* is to furnish a means of identification, not limitation. Identification is not at all synonymous with limitation, which latter word is the legal significance appellees would attach to this contract provision. The test as to the defendants' liability depended and depends on whether or not the notes, drafts, and such like instruments, for which payment defendants are now called upon for contribution, were in fact purchased from or discounted for the Smith Center bank by the Kansas City bank. Such are the plain terms of the contract.

The question before us is one for judicial construction and not necessarily controlled by evidence or findings of fact, although the trial court's finding of fact does accord with this conclusion. Defendants' contract recited that it was a continuing guaranty which was to remain in full force until written notice of its revocation was received by the Kansas City bank and to continue thereafter until all notes and other obligations of the Smith Center bank acquired by the Kansas City bank before the receipt of such notice had been fully paid. Since no such notice of revocation was given or received, the all-inclusive character of defendants' obligation is not fairly subject to the restricted interpretation which appellees now seek to give it. Appellees cite decisions to the effect that a guarantor is a favorite of the law, and that his liability is never extended

beyond the precise terms of his obligation. But here unless defendants are fairly held to the precise terms of their obligation, their liability will be expunged altogether by arbitrary interpretation. (32 Cyc. 73, 74; 28 C. J. 936, 937; 31 C. J. 426, 427.) Moreover the old rule that a surety is a favorite of the law arose from judicial tenderness toward voluntary and accommodation sureties. The rule probably never had much potency when applied to guarantors or indemnitors in contracts for the protection of those who extend credit to a business institution in which the obligors have such an interest as officers and directors do have in the business activities of a bank intrusted to their management and control and in whose financial success they have a personal, beneficial interest. (See *Bank v. Bear*, 111 Kan. 193, 206 Pac. 902.)

It seems to be well established that the giving of a new contract of guaranty and indemnity does not release the obligors of a similar former contract, unless the parties mutually so intend. (*First Nat. Bank v. Story*, 103 N. Y. Supp. 233; 131 App. Div. 472, 115 N. Y. Supp. 421; affirmed 200 N. Y. 346, 34 L. R. A., n. s., 154; *Barnes v. Cushing*, 168 N. Y. 542.)

To the same effect, in principle, are our own cases: *Bank v. Woodward*, 101 Kan. 172, 165 Pac. 854; *Muckenthaler v. Noller*, 104 Kan. 551, syl. ¶¶ 1 and 2 and citations, 180 Pac. 453.

We conclude, therefore, that the defendant obligors of the guaranty and indemnity contract of 1919 were equally liable with the plaintiffs who were obligors of the contract of 1922, and since the latter have discharged all the liabilities of the Smith Center bank for which both groups of obligors were liable, they are entitled to contribution, and this cause is remanded with instructions to award such contribution to plaintiffs as a proper accounting shall disclose to be justly due from these defendants.

Reversed and remanded.