RICHARD RICE ET AL., APPELLEES, V. THOMAS H. MC-CAGUE, TRUSTEE, APPELLANT.

FILED MAY 22, 1901.  No. 9,544.

Commissioner's opinion.  Department No. 3.

1. Assignment of Note and Mortgage by Payee: DEFAULT IN INTEREST INSTALLMENT: ELECTION OF REMEDY BY ORIGINAL PAYEE: HIS CONSEQUENT LIABILITY.  When a payee in a note and mortgage

has sold and assigned the same, accompanied by his own collateral guaranty of the prompt payment of the interest and of the collection of the principal within two years after it becomes due, and afterwards, upon the happening of a default on an installment of interest, seeks and obtains the note and mortgage from his assignee for the purpose of enforcing collection, and thereupon, without consulting the assignee with respect to the methods to be pursued, prosecutes against the debtor remedies of his own selection, he, himself, becomes responsible for any default, negligence or dilatoriness in pursuit of the principal and the same will not be imputed to his assignee.

2. **Contemporaneous Contracts Pertaining to Same Subject-Matter: Intent Shown by Conduct.** In an instance like the foregoing, contemporaneous contracts between parties, pertaining to the same subject-matter, the nature of the transaction between them and attendant circumstances, and the meaning in which they, as indicated by their own conduct, appear to have intended the language of the guaranty to be understood, may properly be taken into consideration in interpreting that document. ·

3. **Exhaustion of Remedy: Diligence and Good Faith:** There is no inflexible rule that a creditor, holding as collateral to his own demand the guaranty of a third person of its collection, must exhaust his legal remedies against the principal debtor before calling upon the guarantor for payment. What is required of the creditor in such cases is diligence and good faith, and if it is shown by any competent evidence that the principal is insolvent and the creditor has been guilty of no negligence, the guarantor will be required to respond.

APPEAL from the district court for Douglas county. Heard below before KEYSOR, J. *Affirmed.*

*Charles B. Keller,* for appellant.

*Acheson & Adams, contra.*

AMES, C.

Except as hereinafter otherwise stated, during all the times mentioned in the following opinion the Anglo-American Mortgage & Trust Company was a Nebraska corporation, engaged in the city of Omaha, in this state, in the general business popularly known as money loaning, and the Union Trust Company was a Pennsylvania corporation, with its place of business at Philadelphia,

in the last named state, which business consisted in part, at least, in the brokerage of real estate securities. For the sake of brevity, the former mentioned institution will be hereafter called the Omaha company, and the latter the trust company. On the 8th day of March, 1889, the Omaha company entered into a contract with the trust company by which it appointed the latter its agent in the city of Philadelphia "for the sale of guaranteed western mortgages and other securities," in which it was stipulated, among other things, that the trust company should receive from "the said Anglo-American Mortgage & Trust Company, of Omaha, Nebraska, interest falling due upon said mortgage and other securities from time to time and pay the same over to the purchasers and owners of said securities respectively." The trust company was to be compensated for its services by a commission on the amount of its sales. By this means it will be seen that the two companies contemplated the joint retention and control by themselves of the management of the loans even after the sale of securities. The Omaha company was to collect the amounts falling due upon the loans and remit them to the trust company, and the latter was to distrubute the sums to the owners of the securities. On the 1st day of March, 1889, the Omaha company had loaned to the Briggs Place Building Association, another Omaha institution, the sum of $2,500, and had received on account thereof the note of that institution payable, as to principal, five years after date, with interest at the rate of six per cent per annum, payable semi-annually, in accordance with coupons attached to the note. The note was made to the Omaha company, as payee, and a mortgage to one Lysander W. Tulleys, as trustee, to secure the payment of the note. Shortly afterwards the note was sold, through the instrumentality of the trust company, to a certain Dr. Agnew, of Philadelphia, and was indorsed with an assignment by the Omaha company in blank, without recourse, but at the time the papers were

transmitted to the trust company for sale they were accompanied by a written guaranty, as follows:

"For value received the Anglo-American Mortgage and Trust Company, of Omaha, Nebraska, hereby guarantees: First, the collection within two years after maturity of the principal mortgage bond of Briggs Place Blg. Ass'n for $2,500, dated March 1st, 1889; second, the prompt payment of interest thereon at 6 per cent per annum until paid. Reserving the right, in case of a default before the bond matures, or in case this company, for any valid reason should wish to pay it before maturity, to take up said bond paying therefor, in cash, the amount of principal and interest accrued at the date of payment.

"Witness our hand and seal at New York, this 22nd day of April, 1889.

"[SEAL.]      J. N. BROWN, *Vice President,*
"J. V. McDOWELL, *Secretary.*"

To this instrument was affixed the corporate seal of the Omaha company. The papers were also accompanied by an application from the Briggs Place Building Association to the Omaha company for a loan, in which it was represented that the lot purported to be conveyed by the mortgage was worth $2,500; that there was a dwelling-house and other buildings thereon of the value of $4,500, and that the latter were insured for the sum of $1,500 in a responsible insurance company. Some time in December, 1890, it appears to have been ascertained by the Omaha company that there had been a mistake committed with respect to the loan in question, as a result of which the mortgage purported to convey a lot not contemplated to be accepted as security at the time it was made, and that the house and other improvements described in the application were situated not upon lot 11, in block 11, described in the mortgage, but upon lot 11, block 10, so that the mortgage was inadequate security for the loan. On the 10th of that month, therefore, the Omaha company wrote to the trust company, requesting a return of the bond, trust deed, application and

abstract pertaining to the loan, saying that the interest
had been in default since the first of the preceding Sep-
tember, and that the company hoped to bring it up with-
out suit, but that it might be obliged to retain the papers
for foreclosure purposes, and in that event would send
the trust company a receipt by its attorneys, and saying
that the trust company would, of course, retain the guar-
anty given in connection with the loan.   After some fur-
ther correspondence in regard to the matter, the request
of the Omaha company was complied with, and the
Omaha company and its attorneys have since retained,
and still retain, the possession of all the papers.   In July,
1891, by direction of the Omaha company, an action was
begun in the United States circuit court for this district,
in the name of Lysander W. Tulleys, as trustee for the
Union Trust Company of Philadelphia, plaintiff, against
the mortgagor and other persons, seeking to reform the
mortgage by substituting a description of lot 11, in block
10, for that of lot 11, in block 11, and to obtain a decree
of foreclosure and sale of the mortgage as reformed.
That action is now pending and undetermined.   In Jan-
uary, 1892, the Omaha company went into the hands of
William A. Redick, as receiver, and the trust company
first learned by means of a letter from the receiver, under
date March 28, 1892, the fact of the mistake in respect
to the description of the ·property in the mortgage and
what was the true nature of the action pending in the
United States circuit court.   Some time in June or July,
1892, the receiver was discharged and the Omaha com-
pany resumed possession and control of the assets and
business; but in July, 1893, the present appellant, S. S.
Curtis, was appointed receiver of the company and has
since then been in discharge of his duties in the winding .
up of its affairs.   In April, 1896, Dr. Agnew, having died,
and no satisfaction having been obtained on the note
and mortgage by the Omaha company, its attorneys and
the receiver having declined to relinquish possession of
the papers, the executors of Agnew applied for, and ob-

tained leave to file a petition in intervention in the re-
ceivership suit, setting forth more fully and in detail
than is here stated, the above recited facts and circum-
stances, together with other matters which it is not
deemed essential or important to recite here.    To this
petition the receiver interposed an answer, admitting
part of the allegations of the petition, but, among other
things, alleging that the action in the United States cir-
cuit court was begun at the instance and request of the
trust company and for its benefit and protection, and
that the reason why the suit had not been pressed to a
determination was that that course had been forbidden
by the trust company, and that the reason why the bond,
note and trust deed had not been returned to the trust
company was that they were annexed to a deposi-
tion and were parts of the files in the suit in the United
States circuit court, and that the trust company had
declined to satisfy certain charges thereon for disburse-
ments in the suit, and for taxes paid by the Omaha com-
pany or its receiver, and pleading the statute of limita-
tions.    To this answer a reply was filed, which it is not
deemed necessary to particularly recite at this time, and
which put in issue, in one form and another, all the al-
legations of new matter contained in the answer.    After
the trial, the district court made a series of findings of
fact, which are very full and complete, but which are
too long to be inserted in this opinion, and which do not
differ materially from the foregoing statement.    As a con-
clusion from such findings the court adjudged that Sam-
uel S. Curtis, receiver, be directed to pay out of the assets
of the Omaha company to the petitioners the amount of
said mortgage debt, with accrued interest, being $3,550,
with interest at the rate of seven per cent per annum,
from March 1, 1897, and to pay out of said assets the cost
of intervention.    From this decree the receiver appealed
to this court.

It can hardly be seriously disputed that the above
quoted guaranty purports to be the act of the Omaha

company. It begins with the statement: "For value received, the Anglo-American Mortgage and Trust Company, of Omaha, Nebraska, hereby guarantees," etc., and concludes with attestations by the signatures of the vice president and secretary of the company and its corporate seal. It may be doubtful if more formal phraseology could have expressed more clearly the intent to execute the instrument in the name and on behalf of the corporation. In the absence of evidence to the contrary, the recitals are sufficient proof of authority for its execution. *Hayden v. Lincoln C. E. R. Co.*, 43 Nebr., 680. In addition thereto, authority may well be inferred from the nature of the business in which the Omaha company was engaged. It is equally free from doubt that it inured to the benefit of whomsoever became the purchaser of the note and mortgage to which it referred. It rests upon two sufficient considerations: First, the agency agreement between the Omaha company and the trust company; and second, the money paid by Dr. Agnew for the securities in question. It is not likely that the note assigned without recourse could have been sold to advantage in a community of strangers, although it was supposed to be secured by a mortgage on real estate in a distant city, if it had not been understood that the guaranty supplied the lack of an indorser's liability. My conclusion, therefore, is that the guaranty is the valid obligation of the Omaha company; that it is collateral to the note and mortgage of the Briggs Place Building Association, and followed those instruments into the hands of the present holders of them who are entitled to enforce it against the former corporation and its assets according to its true intent and meaning, unless that right has been lost or impaired by negligence. For the purpose of interpreting the document, it is proper to look into other papers constituting parts of the same transaction and to consider the nature and course of the business between the parties to it and their own apparent contemporaneous construction of it. By the terms of the

agency contract between the Omaha company and the
trust company, the former very plainly reserved the gen-
eral management and control of the securities which
they sold and guaranteed, including the right to collect
both the interest and principal thereof and to remit the
same to the trust company. The latter was required to
keep a registry of all sales made by it, in a book to be
especially kept for that purpose, and to keep correct
books of accounts of all receipts from such sales, and also
of all sums received by it from the Omaha company, on
account of interest falling due and collected and remitted
to it from the Omaha company and to pay the same over
to the purchasers and owners of such securities respect-
ively. Nothing is said in this contract about the col-
lection of the principal, but the correspondence in the
record shows that the Omaha company demanded, or, at
least, requested, the opportunity to enforce the same,
and the possession of the securities for that purpose, with
which request, the trust company reluctantly complied,
and that it thereupon took such steps in the matter as
it saw fit without informing the trust company or the
owner of the securities or the representatives of the lat-
ter, either as to the misdescription in the mortgage or
as to the nature of the action which was begun and in
course of prosecution, or of the insolvency, or at any rate,
practical dissolution of the mortgage company. Of all
these things, the trust company and its clients seem to
have remained ignorant until they were informed con-
cerning them by a letter from Receiver Redick, under
date of March 28, 1892. In the light of all these circum-
stances, it is not an unfair inference that the parties
interpreted the guaranty to mean that the Omaha com-
pany undertook to be responsible absolutely for the
prompt payment of the interest installments when due,
and the collection by it of the principal of the mortgage
debt within two years after its maturity. Such a con-
struction would do no violence to the language used and
would be more consistent with the course of business be-

tween the parties than one which would give to ·the words, "guarantees the collection," their technical legal meaning, as they are ordinarily employed, and impose upon the holder the duty to exhaust, to a reasonable extent, his remedies against the maker before calling upon the guarantor. But it is not necessary to resort to this interpretation in order to reach a true solution, of the difficulty in hand. The evidence in this record is conclusive and overwhelming that the Omaha company not only sought and obtained possession of the note and mortgage for the purpose of adopting their own methods to secure their payment, concerning which they did not consult the trust company or its customer, but that it studiously concealed from the latter the true state of affairs until the responsibility of the maker, if it had ever had any, had vanished. If there was any dilatoriness or negligence in omitting to attempt recovery from the Briggs Place Building Association, or to foreclose the mortgage upon the property which it describes, the fault is that of the Omaha company and not of the trust company, or of Dr. Agnew, or his representatives. To hold otherwise would be to permit the Omaha company to gain an advantage by its own wrong, a thing which the courts never intentionally do. Beside this, the Omaha company having taken on itself to elect in behalf of its assignee to treat the mortgage as a lien, not upon the premises described in it, but upon the lot upon which the dwelling is situated, it is estopped now to complain because a different course was not pursued. It is not an inflexible rule that a creditor holding a collateral guaranty by a third person for the collection of his demand is bound to exhaust his legal remedies against his principal debtor before resorting to his guarantor. Insolvency of the principal renders the obligation of such a guarantor absolute, and a judgment against the former, upon which execution has been issued and returned unsatisfied, is regarded, in most cases, as satisfactory and conclusive proof of his insolvency; but it is not the ex-

clusive evidence of that fact, nor is it exempt from impeachment. All that is required of the creditor is the use of due diligence for the collection of his demand from the principal. If he has exercised such diligence, and it is shown that the principal is insolvent, so that a suit, judgment and execution against him would be fruitless, the guarantor may be called upon to respond. *Stone v. Rockefeller*, 29 Ohio St., 625; *Camden v. Doremus*, 3 How. [U. S.], 515. "It is the doctrine of a majority of the courts and seems the better opinion, that the fact that it [the debt] is not collectible, may be shown by any other competent evidence as well as the fruitless prosecution of a suit against the previous parties liable for the debt, and if such parties are actually insolvent, no suit against them is necessary to charge the guarantor." Brandt, Suretyship & Guaranty, sec. 98, and cases cited. There is but little, if any, direct evidence in this record that the Briggs Place Building Association is insolvent, but it may be fairly presumed to be so from the fact that the Omaha company and its receivers have had the matter of the collection of the mortgage in their exclusive charge since January, 1891, and have taken no steps to enforce the personal responsibility, if any, of the mortgagor. But the question is immaterial. The two years named in the guaranty have elapsed, the creditor has been guilty of no laches and the money is unpaid. The right of recovery is, therefore, complete. The right of action of the interveners is founded upon the contract of guaranty and is not affected by the statute of limitations. It did not become complete until March 1, 1896, two years after the maturity of the principal debt, and the application for leave to intervene in the action was made on the 15th day of the following month. The continuing force of the guaranty was acknowledged by the Omaha company, by letter, under date of July 21, 1892.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.