VALLEY NATIONAL BANK, Appellee, v. J. H. COWNIE,
Appellant.

**Contract of guaranty:** CONSIDERATION: NOTICE OF ACCEPTANCE:
1 WAIVER. Where the stockholders of a corporation executed a written
guaranty for the repayment of loans or credits extended by a cer-
tain bank to the corporation, the guaranty to be several and to be
measured by the amount of their stock in the corporation, respect-
ively, the guaranty of each in proportion to his interest constituted
a beneficial consideration to all; and as the contract expressly
waived notice of the acceptance thereof, the failure to give a
guarantor notice did not avoid liability.

**Same:** RENEWAL OF INDEBTEDNESS: DISCHARGE OF GUARANTOR. Where a stockholder's contract of guaranty for loans and credits not exceeding a certain sum in any one year, including renewals, extensions and new loans, the intention being that it should not only cover repayment of the original loans up to the limit stated, but also all indebtedness for the year, a guarantor was not discharged by the mere giving of renewal notes and an extension of time.

**Same:** DISCHARGE OF GUARANTOR: RENEWAL OF INDEBTEDNESS: PLEADING. The defense by a guarantor that loans were renewed and extended without notice to him must be pleaded to be available.

**Same:** DISCHARGE OF GUARANTOR: RENEWAL AND EXTENSION OF PAYMENT. Where a stockholders' guaranty recited that they were interested in securing credit for the corporation, and they severally guaranteed payment of all loans to the corporation to the extent of the value of their stock, including all renewals and extensions, and they severally waived notice of acceptance of the guaranty and all other notices necessary to be given, either before or after the extension of credit to the corporation, their beneficial interest in the corporation rendered them absolutely liable as principals, and they were not discharged by a failure to give them notice of renewals of the indebtedness and extensions of time of payment.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

SATURDAY, MARCH 14, 1914.

ACTION upon a contract of guaranty. There was a general denial and certain affirmative defenses. From a judgment for plaintiff, the defendant has appealed.—*Affirmed.*

*C. C. Dowell,* for appellant.

*Thos. F. Stevenson,* for appellee.

EVANS, J.—The plaintiff's action is brought upon the following written contract:

June 3, 1908.

Whereas, the directory board of the Des Moines Corn Milling Company of Des Moines, Iowa, have authorized the

officers of said company to borrow from time to time sums not in excess of thirty thousand dollars ($30,000) for it; and, whereas, the banks demand security and are unwilling to loan on the credit of said company alone; and, whereas, each of the undersigned is a stockholder of said company and owns the number of shares of its stock set opposite his name below, each of said shares being the par value of one hundred dollars, and is interested in securing credit for said company:

Now therefore, in consideration of the premises and in order to enable said company to secure loans or credit for the sum above mentioned, each of the undersigned agrees to guarantee and does hereby absolutely and without condition guarantee that said company will pay all loans and credits which it may secure from the Valley National Bank of Des Moines, Iowa, when due, according to the terms of the instruments evidencing the same, to the extent of the par value of said stock now owned by him as shown below, said guaranties being several and not joint, and will on default of said company on demand made by said bank, pay said sum to be credited on indebtedness of said company to said bank.

And H. H. Polk and G. B. Hippee hereby absolutely without condition guarantee that they have the power and authority to bind and do hereby bind the estate of Jefferson S. Polk by this agreement, and each of the undersigned hereby waives notice of acceptance of this guaranty and all other notices of every kind necessary or proper to be given either before or after the giving of said credit.

The undersigned also guarantees that said loans have been duly authorized by the board of directors of said company and that it has the legal right to make said loans in the maximum aforesaid.

The aggregate amount of the loans and credits guaranteed hereby shall not at any time exceed thirty thousand dollars, and this guaranty shall cover all loans and credits not in excess of said sum during the year 1908, including renewals, extension, and new loans, the intention being that the guaranties shall not end with the payment of this indebtedness originally incurred up to the limit stated, but shall include all indebtedness up to said limit during the year 1908.

This guaranty shall cover loans made during the year 1908 and no other, and shall not exceed thirty thousand dollars ($30,000). And the parties hereby further agree to pay

a reasonable attorney fee if suit shall be brought on this instrument or expense incurred in the collection of the amounts agreed herein to be paid.

| Name. | No. of Shares. |
|---|---|
| N. T. Guernsey. | Ten (10) guaranteeing $1,000. |
| Estate of Jefferson S. Polk. | Thirty (30) guaranteeing $3,000. |
| H. H. Polk. | Fifty-one (51) guaranteeing $5,100. |
| Alice K. Polk. | Ten (10) guaranteeing $1,000. |
| G. B. Hippe. | Thirty (30) guaranteeing $3,000. |
| P. J. Mills. | Twenty (20) guaranteeing $2,000. |
| Chas. S. Denman. | Eighteen (18) guaranteeing $1,800. |
| D. S. Chamberlain. | Thirty-seven (37) guaranteeing $3,700. |
| Jansen Haines. | Six (6) guaranteeing $600. |
| J. B. Weaver, Jr. | Six (6) guaranteeing $600. |
| Wilton McCarthy. | Six (6) guaranteeing $600. |
| L. E. Harbach. | Five (5) guaranteeing $500. |
| J. H. Cownie. | Twelve (12) guaranteeing $1,200. |
| J. H. Polk. | Thirty-five (35) guaranteeing $3,500. |
| B. F. Kauffman. | Five (5) guaranteeing $500. |

The defendant pleaded a general denial, subject to certain specific admissions; pleaded affirmatively a want of notice of acceptance of the guaranty by the plaintiff; and pleaded payment by the principal. The defendant offered no evidence upon the trial. At the conclusion of the evidence, no material fact being in dispute, the trial court directed a verdict for the plaintiff.

1. CONTRACT OF GUARANTY : consideration : notice of acceptance : waiver.

The defendant has little standing room for his defense. All that is claimed against him is the amount separately guaranteed by him. No other party to the contract has resisted its obligations. The contract is something more than a contract of mere guaranty; it is signed by the stockholders of the borrowing corporation. The signers purport to be parties in ''interest.''

The undertaking of each one is measured by the extent of his interest in the borrowing corporation. The borrowing was for the benefit of the guarantors as the owners of the borrowing corporation. Inasmuch as the contract is signed by the owners, the several guaranty of each in proportion to his interest operates as a beneficial consideration to all. The undertaking expressly purports to be "absolutely and without condition." It expressly waives all defenses which might otherwise be available to a mere guarantor. It expressly waives notice of acceptance. This affirmative defense need not be further considered.

Upon delivery of this contract, the plaintiff bank loaned to the corporation $30,000, in 1908. It amounted, in practical effect, to the borrowing of a working capital by the stock-

2. SAME: renewal of indebtedness: discharge of guarantor.

holders. Within less than two years the corporation failed. No part of the principal of the loan was ever paid by the corporation. Its notes were surrendered as they matured, and renewal notes were taken in return upon extended times. Defendant's plea of payment is based wholly upon the formal surrender and cancellation of the original notes. He does not claim that they were paid in any other sense than by renewal notes and by extension of time. He admits the renewals and the extension. The contract sued on provides, in express terms, for this very thing.

Appellant's argument here goes beyond his pleading in the court below. He contends here that he had no notice of

3. SAME: discharge of guarantor: renewal of indebtedness: pleading.

the renewals and extension, and that he was therefore released for want of such notice. Such defense is not available to him without pleading it. Code, section 3629; *Bishop v. Hart*, 114 Iowa, 96.

If he had pleaded it, however, it would be without merit on this record, for the reasons already indicated. Because

of their beneficial interest in the contract, these signers were
not "favorites of the law" in the ordinary

4. SAME: discharge of guarantor: renewal and extension of payment.
sense of guarantor or surety. Not only were
they beneficially interested, but they were the
only persons to be benefited by the loan. The
corporation was their own artificial creation, organized for
their own profit. As between themselves and their corporation, the corporation was the principal, and each signing
stockholder was severally guarantor of a limited amount,
which was proportionate to his interest. But, as between them
and the loaning bank they severally made themselves to such
extent absolutely liable as principals; and there is no principle of law which entitles them to more commiseration from
the court than should be extended to any other debtor. Their
undertaking was based upon a beneficial consideration coextensive with their liability.

The following excerpts from *Bank v. Gay*, 57 Conn. 224
(17 Atl. 555, 4 L. R. A. 343), is quite in point:

Courts, when called upon to construe contracts guaranteeing the faithful discharge of the duties of an office, adhere
closely to the letter, for this reason: That the obligor has
assumed a burden of responsibility solely for the benefit of
another, without compensation or possibility of profit to himself, and therefore the law will add nothing to it by way of
presumption. In the case before us the defendant, with
others, desired to become a manufacturer, of course, for
pecuniary profit. For the purpose, among others, of putting
a limit to individual responsibility for losses, they associated
themselves under the statute as a joint-stock corporation.
Being unwilling individually to contribute the necessary capital from money in hand, they determined to borrow it from
the plaintiff. For convenience in the transaction of the business, the money was borrowed upon notes made by the corporation. To avoid the inconvenience of indorsements by several individuals of each of a large number of original notes
and the renewals thereof, the obligors made one comprehensive
continuing contract of indorsements in the form of a guaranty under their respective hands and seals. In effect, there-

fore, the defendant borrowed money for himself and his associates; he received and used it for his and their profit; and still has it in possession. It is difficult therefore to perceive any distinction between his case and that of any other borrower; . . . difficult to see any reason why he should ask, or the court should grant, the special protection of the law applicable to that relation. It may well be presumed that obligors would desire to limit the time during which they would be bound for the faithful performance of the duties of an office by another. But, inasmuch as both morally and legally it is the duty of every man to repay money borrowed for his own use and profit, it must be the presumption that these obligors intended to do so; that they intended to pay it to the plaintiff, or even to such person or other corporation as should legally become the assignee of its right to receive. . . . Again, the letter of their obligation has this, and no other, limitation, namely: They guarantee the repayment of money, to a limited amount, which the plaintiff should thereafter lend to the corporation, reserving the right to terminate the contract at will. . . . Moreover, in the second paragraph of its reply, the plaintiff alleges that the notes upon which it asks a judgment are renewals in full, or extensions of such part as has not been paid, of notes made before the expiration of the limit first put upon its existence. To this the defendant demurred, averring that the allegation is immaterial, for the reason that, if, after the day of expiration of the first limit to the corporate life of the plaintiff, it renewed any notes, such renewal would of itself discharge the defendant from liability. But by the bond the obligors guaranteed 'the full, prompt, and ultimate payment of all promissory notes.' Beyond doubt it was in the contemplation of both parties that the relation of borrower and lender thus formally established would continue during a long period of time—for years. . . . But, however that may be, it is beyond doubt that both parties contemplated that, although the lending by the plaintiff would be in form upon the comparatively short time customary to a bank, yet, in fact, the borrower would long continue to be such by renewal or extension. Therefore the bond is framed to meet such contingency. To guarantee 'full and prompt' payment would meet the case of a note, on usual bank time, actually to be paid in full at maturity. To guarantee, in addition to 'full and prompt' pay-

ment, the 'ultimate' payment can have no other meaning than that the obligor should continue bound to the end of all substitutions, renewals and extensions.

Apart from the question of beneficial consideration, however, the very terms of the contract will bear no other construction than that put upon it by the trial court.

In *Savings Bank v. Boddicker*, 105 Iowa, 548, a guaranty contract was construed which was less emphatic and specific in its terms than the one under consideration. Such contract contained the following provisions: "It is the intention and purpose of this instrument or obligation to fully protect and indemnify the said Benton County Savings Bank or its assigns against any and all loss by reason of the failure of the said Miller & Sons to pay their indebtedness now owing (or which may be contracted hereafter) to the said Benton County Savings Bank." Construing such provision this court said:

The evidence tended to show that the time of paying some of the indebtedness of J. S. Miller & Sons which existed when the bond in suit was given was afterwards extended, and that new indebtedness was thereafter contracted; and it is insisted that the bond does not cover either class of indebtedness. The bond, in terms, covered the indebtedness of the firm which it owed to the plaintiff at the time the bond was given, or which should thereafter be contracted. . . . But all the provisions of the bond must be construed together, and, when that is done, it is clear that the bond was intended to secure the payment of the indebtedness of the firm to the plaintiff which existed at the time the bond was given, and also that which should be created by contract thereafter. The provisions were sufficiently broad to include renewals of existing debts, as well as those which should otherwise accrue, for the continuance of the business of the firm was evidently contemplated, and contracts for the extension of existing debts were as much within the scope and purpose of the bond as were those which should be thereafter created.

Somewhat in point also are the following cases: *Hoyt v. Quint*, 105 Iowa, 444; *Iron Co. v. Cutlery Co.*, 130 Iowa, 736;

*Merritt v. Haas,* 113 Minn. 219 (129 N. W. 379; Id., 106 Minn., 275, 118 N. W. 1023, 119 N. W. 247, 21 L. R. A. (N. S.) 154); *First National Bank v. Wunderlich,* 145 Wis. 193 (130 N. W. 98).

The judgment below was right, and it is accordingly —*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.